Good morning, Your Honor. In case Judge Tallman didn't get the letter, I am ceding my time to Mr. Bailão since we have a common issue, and that's our own. Very well. Thank you very much. Mr. Bailão, you're on deck. Mr. Bailão. Bailão, okay. Thank you. Always appreciate the help. Good morning. My name is Ethan Bailão, and I speak for Andrew Eshagbu. I represent him on this appeal, and as Ms. Wilder informed the panel, I will argue the cause for both appellants in these consolidated matters. I'd like to first address Mr. Eshagbu's assignment of error regarding the 404B evidence. Then I will address the joint reasonable doubt instruction raised by both appellants. And if I have sufficient time, I'd like to try to speak briefly about the prosecutor's improper summation, but I will watch my clock. I'm going to do my best to reserve five minutes. Okay. I'll try and help you. Thank you, Your Honor. To begin with, we contend, Mr. Eshagbu contends that the court improperly admitted 404B evidence of a prior act from 1995 where it was alleged that Mr. Eshagbu had submitted an application on behalf of a man by the name of Emanuel Eshagbu as his purported son. We contend that it was argued that this was propensity evidence, and that's in direct derogation of the rule. The government's theory was, in essence, he lied before he lied again. They argued to the jury in both opening and summation that this evidence was to show that he had lied previously, so he must have lied again. This is propensity, and it's a barred basis. That reason alone meant it should not have been admitted. In fact, the government foreswore at the motion to eliminate stage that they would ever contend that the 1995 application was fraudulent. So there was no basis to admit it. We recognize that 404B does permit other act evidence when it's not designed as propensity evidence, but for a specific limited purpose. The rule specifically says plan, does it not? It's admissible in order to show plan. Well, yes, that's true. And as I understand the theory of the government's prosecution here, it was essentially a scheme to obstruct or defraud the activities of the BCIS in granting immigration benefits. No. And your client is saying, no, that's not what I was doing here. This was not a sham marriage. But the problem that he's got is, and I think it does go to knowledge and intent, if he did previously submit false documentation in order to influence immigration benefits, then it does seem to be probative under 404B of what his intent was with regard to whether or not he was going to marry Ms. Mays in order to get citizenship. Oh, I'm sorry, Your Honor. I think you're confusing this case with the prior case. I couldn't very well be. There was no sham marriage in this case. The sham marriage was the other case. Those were not the allegations. That is not this trial in any way, shape, or form. Thank you. You're very welcome, Your Honor. The government's theory was that Ms. Anyamu, on her third time to get benefits, called a Newman application, had now claimed that she had lived in America and met Mr. Ishebu in Tulsa, in Oklahoma, when he was a student. And Mr. Ishebu's defense was, in essence, Anyamu's a liar. She never lived with me in Tulsa. She never lived with my wife. I had nothing to do with this. She and my wife had the means, opportunity, and motive to give the documents just like they did for Kavina Mays, but I did not sign these documents. I did not participate in this. And everything in her Newman application is false. We don't contest this in any way, shape, or form. And so it didn't go to a plan. What the government argued was that it was modus operandi, but since it was an identity case, they had to show distinctive similarity. And they can't do that on this record because in 1995, the evidence which they foreswore was fraudulent was that he used his own status as a United States citizen to obtain benefits for his son. And the 2006 Newman application was not strikingly similar as required under Perkins because he was not using his citizenship and he was not applying for another. His declaration was one of seven declarations created on an identical computer in the identical format with nearly identical submissions attached to them, supposedly supporting her story that she lived in Tulsa and she met him on a plane and all the rest of the bunk that supported the Newman application. And they weren't similar. So it was not strikingly similar to make the identity standard the fourth prong which is necessary. Counsel, this is Judge Rawlinson. Why weren't they similar in that the M.O. was to attempt to obtain citizenship for relatives by giving false statements that would qualify those relatives for admission? Well, it wasn't strikingly similar. What the case law says, and this is Perkins and Luna, is you have to look at the actions taken and the acts have to be strikingly similar. And that's an argument that, well, it's the same general idea. They're trying to help family members. But the acts of in 1990. That's specific. He's trying to get family members in. And to do that, he gives false statements that would improve their chances of being admitted. Because you have to look at what the actions taken are strikingly similar to support an identity inference. Let me give you an example, Your Honor. If the 1995 act was filing a declaration like this case, that would be similar. Or if in the Newman application in the modern case was like 2005 where Mr. Echebu was creating the application in his name and sending it in, that would be similar. But the same motivation. And this can be similar, too. Those examples are not exclusive. No, but what Perkins teaches us is that the prior offense charge concepts, they have to be distinctive. It's not the type of thing that other people could do. And if we look at the other declarations in this case, the declaration submitted supposedly from Doris' father Vitalis, ER 545. Her brother Emanuel, ER 551. Her mother Alice, 557. Her sister Linda, 563. Her uncle Leonard, 572. Mr. Echebu, the one assigned to him, is at 578. And Ms. Mays, those are all very similar. Those are identical. These were created at the same time. That's the similarity the case law talks about. Those are distinctive. They are nothing like the 1995 act, which, again, the government swore was fraudulent. The government told the district judge they would not contend it was fraudulent. And so it doesn't, we believe, meet that standard. And it doesn't go to a material point because, in this case, again, there's no Mr. Echebu did not deny whoever submitted a Newman application, the declaration in his name, intended it to be relied upon, knew it was false. The district court relied on modus operandi under 404B, did it not? Yes. And we're saying that because it's an identity case where he denied that he did it, he did not deny that it was false. He did not deny that it was. But to take Judge Rawlinson's point, if the MO here is to engage in false representations in order to help family members get citizenship benefits, why isn't that properly admissible as modus operandi evidence under 404B? Because Doris Anown was not Mr. Echebu's family member, first of all, so it's not the same MO. And second of all, because if we look at Montoya and Jenkins, MO has to be distinctive as opposed to act. Wait, you said she was a family member. Wasn't she an in-law? Yes, correct.  Not Mr. Echebu's family. He's not his family member. The last piece, which I think is important to recognize, is that the signatures don't match at all. And that was a big part of this case. And I think the government has done the court a great service. I look at government's excerpts of Record 71 and government's excerpts of Record 66, and you look at the dates. Counsel, just to go back to the point about a family member, the first time he was trying to get an in-law into the country, right? No, he was trying to get his son in, and that's why he was using his citizenship to say, this person is my son. It's been represented as my son. I accept that representation. And because I'm a United States citizen, I may base his entry on the fact that I am a citizen. And he actually created the entire application as to how someone gets in there. It's this anchor baby thing we're hearing about nowadays, where a parent or a child can use that direct family relationship. I thought Mr. Eshekbo didn't have any children. That's correct, Your Honor. When he applied, he represented he didn't. What the original case said or the allegations were that he was notified by a woman in Nigeria that he did have children and that they wanted to come here and that he was a father after he left. I don't want to get bogged down too much into this, Your Honor, because I do see my time is moving. Let me ask you a practical question. Given the very short jail sentences that were imposed here, is the real fight here over the fact that if the conviction sticks, they're going to lose their citizenship? No. Mr. Eshekbo is a citizen. They can't take that away from him. So they can't take that away from him. No. The real fight is actually about the deficient jury instruction on reasonable doubt, which we contend requires automatic reversal. We contend that, one, under Sullivan, Louisiana, once we establish that the instruction is erroneous, it requires automatic reversal. The court cannot assess whether it was harmless or implausible that jury relied upon it under Sullivan v. Louisiana. If a district judge who doesn't have to give a reasonable doubt instruction chooses to. Could the case be retried given the fact that they've already served their sentences? Yeah, absolutely. Wow. It can be tried in 70 days. Is the client on supervised release? Yes, my client is. Still? Both are. And Ms. O'Neill is still in the country. Okay. So we contend under Sullivan that once the government concedes the instruction as it must is erroneous, it's automatic reversal and there's no further analysis needed. The government contends and the reason. Counsel, this error was more in the nature of a typo than substantive error in giving the reasonable doubt instruction. I mean, it's fairly clear that there's an extra not in the instruction. It is clear that it's plainly erroneous, but Justice Scalia writing for unanimous court says once you decide it's an infirm instruction, there is no further analysis of whether it's a harmless error or not a harmless error. But it's got to be constitutionally infirm, and I think Judge Rawlinson has put her finger on it. A typographical error does not necessarily produce a jury instruction that's constitutionally infirm. And in fact, as I read it, the error actually helps the defense. It's ambiguous in this sense, but it does say if after careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendants are not guilty, and that's the extra not, it is your duty to find the defendants not guilty. So to the extent that there's an error here, it actually inerrs to the benefit of the defendants. I would disagree, Your Honor. What it says, and I'll read the same section. If they are not convinced beyond a reasonable doubt that my client is not guilty, so the standard is the burden is on Mr. Ashaibu to prove he's not guilty, then it's their duty to find him not guilty. So if he meets the ballot. I would agree with you were it not for the two sentences above, which basically tells the jury what the proof is and who bears the burden. But the section you just said, you suggested that that helps my client and it actually shifts the burden to him. But I have to read the whole instruction in total, not just the one sentence with the typographical error. Well, we contend that it's more than a typographical error. What Sullivan tells us is this instruction is either accurate or it's inaccurate. It either properly defines reasonable doubt or it doesn't. Counsel, Sullivan also tells us that we look at all the instructions, not just the assertedly infirm instruction, but we look at all the instructions to determine whether or not they're structural error. No, actually, I would disagree with that, Your Honor. What Sullivan teaches, and I think you're also talking about Victor versus Nebraska, is that if there's a question about whether the reasonable doubt instruction is an error, we look at all of them for context. The government has conceded that this is an erroneous instruction. This court, because the extranaut, must concede it's an erroneous instruction or this can be given in every case. District judges may give this instruction if it's not. No, that's not true. That's not true. We can determine that's erroneous, but we still have to determine whether or not it's structural error in this case. This case, it does not fall within any of the cases that we've had before. This is a different factual scenario. We would contend that Sullivan is very clear that if the error is erroneous, then it's structural because it vitiates all the findings. And if the court says it doesn't matter or it's a typo or it's limited, then we have a new fact finder, a panel of judges on the Ninth Circuit, determining guilt rather than juries in the box. And it's the one thing a district judge must get right. I just don't see that, given the ambiguity of the extranaut here. If it's what Sullivan says, if it's an inaccurate, if it's a deficient reasonable doubt instruction, you can't say that. I guess deficient in a constitutional sense, and that's where you lose me, because I think that this actually helps more than hurts your client, but you and I read it differently. And that's where I think under the Nebraska case, we got to look at all of the instructions in order to make sure that the jury understood who had the burden of proof and what it was. Well, I think what the Nebraska case says, it ultimately decided that the instruction wasn't infirm. And if this Court decides that this instruction is infirm, then we win. If it decides that this instruction is correct, then we lose. But it has to make that initial finding. And the government's conceded it's an erroneous instruction because it's erroneous. It doesn't properly define the burden of proof. And it's an error that the district court has responsibility for. Well, then you've just completely ignored Victor v. Nebraska, which basically says that a reasonable doubt instruction can be reviewed for harmless error if it's incorrect but not unconstitutional. The question is, when does a typographical error convert a reasonable doubt instruction into an unconstitutional jury instruction under Sullivan, or is it just a harmless extra not under Victor v. Nebraska? I don't think Nebraska talks about that. I think Nebraska says the instruction after review of all of it is proper, and you can give the Nebraska instruction today and tomorrow and the next day. I see I have about five minutes left. I hope we can continue this conversation after we hear from the United States.  Thank you, Your Honor. Okay. We'll hear from Ms. Frick. Good morning again, Your Honors. Erica Frick on behalf of the United States. I'll address the two points that the defendants have raised. First of all, there was no abuse of discretion in admitting the 404B evidence, and I do want to emphasize the standard of review here. The Court does have fairly broad discretion in admitting this sort of evidence. There's no dispute about the four-pronged legal standard. The only issue that Ashegbu raises is that he's claimed his act in 1995 is not similar enough to discharge defense to be admissible. The government response to this is that it's difficult to imagine two acts that are more similar than these two acts. In fact, we've identified seven similarities. One is there were false statements made on the document. He was falsely claiming a close relationship with the applicant. This was both for applications for green cards, both submitted to immigration authorities, both seeking admission to the United States, both seeking admission for one of his wife's siblings, one of his in-laws, and finally, both bearing his signature. And, of course, evidence went to the jury so the jury could make its own comparison of the two signatures. The government submits that this is very much within the ambit of cases like Dhingra, Jenkins, and Oliphant that we cited in our brief and clearly admissible here. Counsel? Yes, Your Honor. Do you agree factually with opposing counsel's representation that the first false statement was made in connection with the defendant's birth son instead of his brother-in-law? No, Your Honor. As you pointed out, the evidence showed that Mr. Ejigbe had no children. That was on his prior immigration documents seeking his own citizenship. And the district court found that, agreed with the government at the — when the evidentiary rulings were being made, the district court agreed with the government that it was implausible that this was — this Ejigbe, Emanuel Ejigbe, Ejigbu Anyanwu, was not the same person who was his wife's brother. So, no, we do not agree with defense counsel on that point. Also, even if this were error to admit, it would have been harmless error, because here there was plenty of evidence for — to support his guilt even without the 404B evidence. The story that Doris Anyanwu presented to immigration involved Andrew Ejigbu as the central figure. And his identifying information was on the documents she submitted, making him the easiest person, CIS, to contact. It also contained extensive personal documentation from him and, again, his signature. Then turning just briefly to the reasonable doubt instructions, the government agrees with the argument that Judge Tallman was articulating earlier. Basically, this was a mistaken word, but it was on the par with a typo, and it was not at the level of constitutional error. For that reason, there's no — this Court doesn't even need to reach the whole structural versus plain error part of this debate, because, as Victor makes clear, you can have And that is this case. There was no constitutional error here. The jury was not confused. Nobody objected. And, again, the extra not helped the defendant, did not hurt the defendant. So that certainly was not plain error or structural error or error under any standard. So I think I've addressed all the points that were raised by the defendants. And unless the Court has any further questions, the government simply asks that the convictions be affirmed. All right. Thank you, Mr. Prince. Thank you. Thank you, Your Honors. Mr. Bull? Ballot. Ballot. I'm sorry. I'm going to get this right before we finish. Sorry. Or next time. Or next time. There you go. I wanted to address a couple of points, and I'll be brief. One, I think the government, when they overstate the strength of their case. In fact, their entire case was the same, against Mr. Shagbu, was the same thing, what their star witness said happened to her, Kavina Mays. That Linda Shagbu and Dara Sanyamu had access to her documents. They presented these statements to CIS without her knowledge. They practiced her signature and signed it on her behalf. And she didn't know about this. And that they had her passport submitted because they had access to her passport. And that all of that evidence of what they did to her, which is how they built their case against Dara Sanyamu, that's the exact same circumstance Mr. Shagbu found himself in. Counsel, was that argument made to the jury? Not nearly as articulately, Your Honor, but yes. Okay, inarticulate or not, it was made to the jury, and the jury didn't buy the argument. So why is that a basis for us to reverse the conviction? Well, it's a basis to understand when the government tells you their case against Mr. Shagbu was so very strong, and his defense was established by one of their star witnesses, and it doesn't make exact sense. There's no distinction there. And the only distinction they tell this Court is that Mr. Shagbu didn't testify, which is Griffin error, cognizable on appeal. That's a reason to discount their quote-unquote strength of their case. And that's why I bring it up, Your Honor. Obviously, the jury returned a verdict of guilt, which is why I stand before you. Regarding the government's final argument, I want to get back to reasonable doubt instruction briefly. They actually told this Court, I think my colleague's last words were, this wasn't error of any kind. And that's the exact problem we're identifying, that the instruction Judge Breyer gave is not error to the government. He may give it today and tomorrow. He may include extra knots. He may confuse jurors on reasonable doubt, the single most important instruction they give, and it doesn't matter. And it isn't error. That's what the government tells this Court, and I have to say I fundamentally agree. Not only error, it was plain. Judge Palmer, you rightly noted that this was obvious, that this should have been caught. It's a plain error. And we know from Recchio in this Court case that it's been caught. But it has to be. I mean, plain error under, what is it, the Omo case? Alano. Alano. I mean, it's got to be prejudicial. And that's where I'm having a hard time. I don't disagree with you. The third and fourth prong, Recchio says the third prong, which has to affect substantial rights. Recchio says a structural error affects substantial rights. And Louis Sullivan teaches us that a deficient reasonable doubt instruction is structural error. But you're going to the conclusion and then reasoning. I can't get to the structural error problem because of the way I'm reading the extra knots. Okay. Well, I think that what we contend is Sullivan stands for the proposition that reasonable doubt instruction is either correct, or it is incorrect. If it is incorrect, then it is structural error. If it is correct, you could read Justice O'Connor's opinion in Victor v. Nebraska the same way, to say that the use of moral standards, whatever that means to a jury 100 years after it was first employed, is ambiguous to a modern jury. And, therefore, it's an erroneous. And then under your approach, it's a structural error. But that's not what the Supreme Court said. Actually, that's right. The Supreme Court said in Victor that that instruction was appropriate. Upheld the instruction itself. We didn't say it was harmless. We're saying the instruction given in Victor, it's okay. You can give it today. You can give it tomorrow. You can give it next month. We're not saying it's the best instruction error, but you can give it. We stand behind this instruction. And I don't think the Court can stand behind Judge Breyer's instruction in Victor. I think that's the great difference. And the last thing I want to speak briefly about, there is concern with the last argument given in this case, that it was the jury was urged to convict because the case was, quote-unquote, about fairness, that Mr. Ashae and Ms. Sanyanu had cut the line and cheated other immigrants and hurt other immigrants and hurt Americans, and they should be punished for this. And that's Weatherspoon error. And the government still doesn't recognize that's an improper argument. They say they can make those arguments, and they can't make those arguments. It's not properly. Not under Sanchez. Not under Weatherspoon. And this is the very last thing the jury heard. And it answers Judge Rawlinson's questions, why the jury convicts, after they heard that articulate argument, in part because they were told it was unfair to people. They needed this extra societal problem. And on that basis alone, it also refers to all these reasons we ask the Court to reverse this case and provide Mr. Ashae with a new trial. Thank you. Very well. Thank you very much, counsel. The case is submitted. We'll get you an answer as soon as we can. And we are adjourned for the week. Thank you. Thank you.
judges: Fletcher B. , Tallman, Rawlinson